[Cite as *In re Guardianship of Beaty*, 2019-Ohio-2116.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE: GUARDIANSHIP OF
NORMAN BEATY                              :

                                No. 107682

[Appeal by Richard A. Oviatt]

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED IN PART AND
                           REVERSED IN PART

**RELEASED AND JOURNALIZED:**  May 30, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2015 GRD 205115

---

### *Appearances:*

Richard A. Oviatt, *pro se*

L. Bryan Carr and Joseph F. Shucofsky, *for appellee/cross-appellant.*

LARRY A. JONES, SR., J.:

{¶ 1}  Appellant/cross-appellee, attorney Richard Oviatt ("Oviatt"),[1]

appeals the decision of the Cuyahoga County Common Pleas Court, Probate

---

[1]Oviatt passed away on December 31, 2018, while this appeal was pending.  No motion for substitution of a personal representative has been filed.  *See* App.R. 29(A).  If there is no representative, then the proceedings shall be had as the court of appeals may direct.  *Id.*  Counsel for appellee/cross-appellant Norma Beaty filed a notice of suggestion

Division, granting him attorney fees. Appellee/cross-appellant, Norma Beaty ("Beaty"), filed a cross-appeal challenging the amount of attorney fees paid to Oviatt. For the reasons that follow, we affirm in part and reverse in part.

**Procedural History and Facts**

{¶ 2} In February 2015, Oviatt filed an application for appointment of guardian on behalf of Beaty to oversee the affairs of her father, Norman Beaty, who suffered from Alzheimer's disease. After Beaty was appointed guardian, Oviatt filed an application with probate court for attorney fees, claiming that from February 18 to July 13, 2015, he had spent 43.75 hours on the case at the rate of $200 per hour, plus $285 in costs, for a total due of $8,750.

{¶ 3} Oviatt subsequently compromised his fee bill and the court granted attorney fees in the amount of $7,503.75.

{¶ 4} Oviatt then filed an adversarial action on behalf of the guardianship. The matter proceeded to a hearing. Beaty did not appear at the hearing but Oviatt asked for the hearing to proceed in her absence. The magistrate recommended the complaint be dismissed.

{¶ 5} In 2016, Beaty obtained new counsel and filed a motion to vacate the judgment for fees. The court granted the motion after a hearing.

{¶ 6} Oviatt filed a second application for attorney fees in the amount of $8,442 for services from July 15, 2015 to March 10, 2016. The matter proceeded to

of death and a motion to waive oral argument that this court granted. We direct that this appeal proceed and be determined as if Oviatt was not deceased. *See Keeton v. Telemedia Co.*, 98 Ohio App.3d 405, 407, 648 N.E.2d 856 (4th Dist.1994), fn. 1.

a hearing in front of a magistrate. The magistrate subsequently issued a decision recommending that the first application for attorney fees and expenses filed on November 9, 2015, be granted in part and denied in part and the second application for attorney fees and expenses filed on September 12, 2017, be denied in its entirety, except for costs and expenses.

{¶ 7} With regard to the first application for attorney fees, filed in November 2015, the magistrate found that the hours represented in the first fee bill were unreasonable and unnecessary for a guardianship matter "that was not of particular complexity or novelty." The magistrate concluded, based on the testimony at the hearing, that Oviatt and Beaty had both acknowledged an initial fee agreement of $2,000 with a $500 retainer, but the agreement was never reduced to writing. The magistrate found that Oviatt failed to communicate with Beaty in writing; failed to communicate additional fees within a reasonable time; failed to provide any monthly or quarterly invoices; and failed to communicate the change in the fee when it exceeded the initial $2,000 agreement. As such, the magistrate recommended that Oviatt receive $2,000 in attorney fees plus $285 for reimbursement of expenses for the November 2015 application.

{¶ 8} As to the September 2017 application, the magistrate concluded that the work Oviatt performed was not related to establishing the guardianship and much of the work was performed after a conflict arose between Beaty and Oviatt. The magistrate noted that while testimony indicated Beaty was at least somewhat aware of the work represented in the second fee bill, she did not authorize Oviatt to

conduct the work. The magistrate found that Oviatt failed to adequately communicate to Beaty regarding billing and progress of the case and recommended that Oviatt only be reimbursed $642 for costs and expenses. The magistrate concluded that Oviatt should receive $2,000 for services rendered plus $285 in costs, less the $500 retainer, pursuant to the initial application plus $642 on the second application, for a total of $2,427.

{¶ 9} Oviatt filed objections to the magistrate's decision. The trial court granted the objections in part, allowing attorney fees on the November 2015 application for $5,200 plus $285 for costs, minus the $500 retainer, and, on the September 2017 application, attorney fees in the amount of $2,500 plus $642 for costs.

{¶ 10} The trial court agreed with the magistrate's findings that Oviatt billed for excessive and unreasonable hours. The trial court further agreed that the guardianship estate had modest means and very limited resources to pay "such extraordinary and unreasonable attorney fees."

{¶ 11} The court disagreed with the magistrate's recommendation that the September 2017 application for fees be denied. The court found that although it had concerns over Oviatt's actions, "the Guardianship did receive minimal benefit from the services rendered in the second fee bill and therefore should be reasonably compensated."

{¶ 12} The court modified the magistrate's decision as follows: (1) November 2015 application — 26 hours at $200 per hour for a total of $5,200, plus

$285 for costs, less the $500 retainer; and (2) September 2017 application – 12.75 hours at $200 per hour for a total of $2,550, plus $642 for costs. In sum, the trial court ordered the guardianship to pay a total of $8,177 in attorney fees.

{¶ 13} Oviatt filed a notice of appeal, contesting the amount the trial court awarded to him. He raises nine assignments of error, which will be combined for review (see appendix). Beaty filed a notice of cross-appeal and raises one assignment of error, in which she argues that the trial court abused its discretion in increasing the amount of attorney fees owed to Oviatt.

**Analysis and Law**

{¶ 14} Oviatt appeals from the trial court's decision overruling his objections to the magistrate's decision. In accordance with Civ.R. 53, the trial court is required to conduct an independent review of the case, having the "ultimate authority and responsibility over the [magistrate's] findings and rulings." *Hartt v. Munobe*, 67 Ohio St.3d 3, 5, 615 N.E.2d 617 (1993). The trial court must decide "whether the [magistrate] has properly determined the factual issues and appropriately applied the law, and where the [magistrate] has failed to do so, the trial court must substitute its judgment for that of the [magistrate]." *Inman v. Inman*, 101 Ohio App.3d 115, 118, 655 N.E.2d 199 (2d Dist.1995).

{¶ 15} In light of this discretion, a trial court's ruling on objections to a magistrate's decision will not be reversed absent an abuse of discretion. *CS/RW Westlake Indoor Storage, L.L.C. v. Kesi, L.L.C.*, 8th Dist. Cuyahoga No. 102535, 2015-Ohio-4584, ¶ 12, citing *Remner v. Peshek*, 7th Dist. Mahoning No. 97-

C.A.-98, 1999 Ohio App. LEXIS 4802 (Sept. 30, 1999). This standard requires more than a determination by the reviewing court that there was an error of judgment, but rather that the trial court acted unreasonably, arbitrarily, or unconscionably. *Id.*

{¶ 16} A trial court must determine whether attorney fees are reasonable based upon the actual value of the necessary services performed by the attorney, and evidence must exist in support of the court's determination. *Koblentz & Koblentz v. Summers*, 8th Dist. Cuyahoga No. 94806, 2011-Ohio-1064, ¶ 9, citing *In re Hinko*, 84 Ohio App.3d 89, 95, 616 N.E.2d 515 (8th Dist.1992). A court should then calculate the number of hours reasonably expended and multiply that sum by a reasonable hourly fee. *Koblentz & Koblentz* at *id.*

{¶ 17} The probate court may consider the factors set forth in Prof.Cond.R. 1.5, which sets forth general principles applicable to determining the reasonableness of attorney fees. *In re Guardianship of Schwarzbach*, 10th Dist. Franklin No. 17-AP-247, 2018-Ohio-1712, ¶ 33, citing *In re Estate of Born*, 10th Dist. Franklin No. 06AP-1119, 2007-Ohio-5006.

{¶ 18} Prof.Cond.R. 1.5 includes the following factors for consideration in determining the reasonableness of a fee:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

{¶ 19} In addition, Loc.R. 71.3 of the Court of Common Pleas of Cuyahoga County, Probate Division, provides:

(A) The following provisions apply to attorney fees allowed as part of the expense for administering a guardianship.

(1) Attorney fees shall be based upon the actual services performed and the reasonable value of the services.

(2) All applications for attorney fees shall set forth an itemized statement of the services performed, the date services were performed, the time spent in rendering the services, and the rate charged per hour.

(3) In determining the reasonableness of the requested attorney fees, the court shall consider the following: the prior experience of the attorney; the complexity of the matter presented; any special problems that may have presented themselves during the representation; the time spent by the attorney; and, for guardianship and trust cases, the amount of assets and income available for the payment of attorney fees.

{¶ 20} This court has held that "attorney fees are not justified merely because the lawyer has charged his [or her] professional time and expenses at reasonable rates; a legitimate purpose must also explain why the lawyer spent that time and incurred those costs." *Lillie & Holderman v. Dimora*, 8th Dist. Cuyahoga

No. 99271, 2013-Ohio-3431, ¶ 12, citing *Disciplinary Counsel v. Johnson*, 113 Ohio St.3d 344, 2007- Ohio-2074, 865 N.E.2d 873, ¶ 71. "[I]n an action for attorney fees the burden of proving that the time was fairly and properly used and the burden of showing the reasonableness of work hours devoted to the case rest on the attorney." *Koblentz & Koblentz v. Ferrante*, 8th Dist. Cuyahoga No. 86969, 2006-Ohio-1740, ¶ 24, quoting *Climaco, Seminatore, Delligatti & Hollenbaugh v. Carter*, 100 Ohio App.3d 313, 653 N.E.2d 1245 (10th Dist.1995).

**{¶ 21}** It is with these concepts in mind that we review the assigned errors.

**November 2015 Application for Attorney Fees**

**{¶ 22}** In his assignments of error, Oviatt claims that he is owed a total of $17,192 plus costs under the two fee bills and the trial court abused its discretion in awarding him only $8,177.

**{¶ 23}** The trial court found the following:

> The Magistrate found, and this Court agrees, that this matter was not of particular complexity or novelty. Attorney Oviatt testified to practicing law for 50 years, spending approximately half of that time practicing probate law. While this court finds the hourly rate of $200 per hour charged by Attorney Oviatt to be customary, the hours expended in both of the Applications for Attorney Fees are excessive and unreasonable. Specifically, in the November of 2015 fee bill, Attorney Oviatt represented 1.5 hours to amend the complaint where the only change made was correcting a misspelled name. He further represented 3.75 hours to review the guardianship file and appear for a brief pretrial hearing. In consideration of Attorney Oviatt's substantial experience in practicing law, these hours billed, as others represented in both applications, are excessive and unreasonable upon review of this Court.

**{¶ 24}** The trial court went on to support its findings as follows:

This Court further takes notice of Local Rule 71.3 which requires this Court take into consideration the assets and income available from the guardianship estate to be used when compensating attorney fees. The Magistrate found, and this Court agrees, that the guardianship estate has modest means and very limited resources to pay such extraordinary and unreasonable attorney fees as requested by Attorney Oviatt.

{¶ 25} The trial court then determined, upon review of the file, that Oviatt should be compensated for 26 hours instead of the 43 hours he originally requested.

{¶ 26} As to the November 2015 fee bill, it is clear that the trial court thoroughly analyzed the attorney fees request and determined the necessity and reasonableness of the fees in accordance with Prof.Cond.R. 1.5 and Loc.R. 71.3. Although Oviatt argues that he should have been compensated for 43 hours of his time, we find no support for his argument. Beaty testified that she agreed to pay Oviatt a $2,000 flat fee to establish the guardianship. Oviatt never provided Beaty with a written fee agreement or informed her that the fee on the case may exceed the $2,000 that was originally agreed on. Beaty further testified that she paid Oviatt $500 for a retainer plus the filing fee but he never gave her a receipt for the payment. According to Beaty, she thought that the $2,000 flat fee would cover the costs of establishing the guardianship and, when Oviatt told her he was going to file an additional lawsuit (the adversarial suit), she assumed the flat fee would cover those costs also.[2]

---

[2]Astoundingly, during cross examination, Oviatt placed the onus on Beaty, the client, to ask Oviatt, the attorney for a written fee agreement. Oviatt asked Beaty if she had a written fee agreement with him. Beaty said that she was not given a written

**{¶ 27}** Based on the foregoing, we find that the trial court's determination as to November 2015 attorney fee application was not an abuse of discretion.

## September 2017 Application for Attorney Fees

**{¶ 28}** We find, however, that the trial court erred and abused its discretion in awarding Oviatt $3,142 on the September 2017 application.

**{¶ 29}** The trial court found the following:

> This Court further finds that the work performed in the second fee bill filed on September 12, 2017, was not related to establishing the guardianship but separate litigation involving the guardianship. Pursuant to Ohio Rules of Professional Conduct Rule 1.4, a lawyer is required to keep their client reasonably informed, and to reasonably consult with their client as to the means of achieving the client goals.
>
> While Ms. Beaty was marginally aware of the work performed by Attorney Oviatt represented in the second fee bill, Attorney Oviatt continued to act on Ms. Beaty's behalf despite clear conflict between them. This conflict hindered Attorney Oviatt from keeping Ms. Beaty reasonably informed or consulting with her as to the progress of her case. The conflict is evident from the testimony of Ms. Beaty and her lack of participation in the matter. Specifically, Ms. Beaty stopped responding to Attorney Oviatt letters, did not respond to phone calls, and failed to appear at scheduled depositions and hearings.
>
> Not only did Ms. Beaty discontinue participation in this case, but Attorney Oviatt continued to bill for services rendered without communicating change in the rate of the fee and expenses as required by [Prof.Cond.R.] 1.5(b).
>
> While this Court has concern regarding Attorney Oviatt actions, this Court finds the Guardianship did receive minimal benefit from the services rendered in the second fee bill and therefore should be reasonably compensated.

---

agreement and Oviatt inquired as to why she did not ask for a written agreement. Beaty responded, "No, I didn't ask you. I just believed you."

**{¶ 30}** The court concluded that Oviatt should be compensated for 12.75 hours at a rate of $200 an hour, plus $642 for costs "to reflect reasonable compensation for his services rendered."

**{¶ 31}** Prof.Cond.R. 1.5(b) provides that:

> The nature and scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in *writing*, before or within a *reasonable* time after commencing the representation, unless the lawyer will charge a client whom the lawyer has regularly represented on the same basis as previously charged. Any change in the basis or rate of the fee or expenses is subject to division (a) of this rule and shall promptly be communicated to the client, preferably in *writing*.

(Emphasis sic.)

**{¶ 32}** The trial court, in this instance, does not support its reasoning for increasing the amount owed other than finding that "the Guardianship did receive minimal benefit from the services rendered." After a thorough review of the record, we disagree and find that Oviatt's conduct outweighs any minimal benefit the guardianship may have received.

**{¶ 33}** Although the trial court may have made a reasoned and supported decision for increasing the amount the magistrate awarded Oviatt, i.e., finding additional activity in the fee bill to be compensable or determining, we simply are unable to determine and, therefore, can only guess at the court's rationale based upon the record and judgment entry before us. Thus, while the trial court's final dollar amount is specific, it is also, by definition, arbitrary because on its face it is a

random amount that is neither consistent with the evidence in the record nor the findings made by the trial court.

{¶ 34} The magistrate found that the fees being charged to the guardianship were excessive and represented work for which Beaty did not authorize or participate. The magistrate noted that the September 2017 fee bill was filed "nearly two years after the work was performed with no explanation from Mr. Oviatt as to the delay in filing," and that much of the work Oviatt claimed he performed was after a clear conflict existed between him and Beaty. The magistrate further noted that the burden was on Oviatt to establish that the work he performed on the case was authorized but Oviatt failed to do so because he did not produce any written communication or a fee agreement and Beaty did not participate in the litigation. The magistrate further found that Oviatt admitted he never discussed any additional fees with Beaty. The magistrate acknowledged that Beaty knew that Oviatt "was pursuing these actions and did nothing to stop it," but the guardianship did not derive a benefit from Oviatt's work. The magistrate concluded that Oviatt's second application should be denied, except for $642 for costs and expenses based on Beaty's minimal knowledge of the work Oviatt had performed.

{¶ 35} The record reflects that Oviatt filed the second action without communicating to Beaty that he was going to do so (from the record we glean that Beaty had minimal knowledge of the adversarial lawsuit and was not communicating with Oviatt at the time). Oviatt admitted that he was no longer representing Beaty as of December 2015 and filed a motion to remove her as

guardian because she refused to pay his fee bill. He did not, however, file a motion with the court to withdraw his representation. Oviatt also went to trial on the matter even though Beaty had not responded to his communications and did not appear for the hearing. The magistrate subsequently dismissed the complaint, finding, in part, that the "burden of proof was not met because * * * [Beaty] did not testify." Oviatt further admitted that he never billed Beaty with regard to the services he alleges he rendered on the second fee bill, because "she wouldn't pay the bills anyway." Finally, we note that Oviatt did not submit his application for attorney fees until almost two years had elapsed.

{¶ 36} After a thorough review of the record, we find that the record supports the magistrate's finding that $642 was the proper amount for recovery on Oviatt's September 2017 application for attorney fees. The magistrate's judgment took into consideration all the necessary factors and findings in support of its decision.

{¶ 37} The assignments of error are overruled. The cross-assignment of error is sustained in part and overruled in part. The case is remanded to the trial court to enter judgment in accordance with this opinion.

It is ordered that appellant/cross-appellee and appellee/cross-appellant split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

MARY EILEEN KILBANE, A.J., and
ANITA LASTER MAYS, J., CONCUR

# APPENDIX

## Appellant's Assignments of Error

I.  Whether the probate court abused its discretion when awarding attorney fees in the sum of $8,677.00 when the record clearly showed that attorney fees were $17,192.00.

II. Whether the probate court can disregard court [Loc.R.] 71.3 when rendering a decision when awarding attorney fees.

III. Whether the probate court can rely upon the erroneous findings of facts of the magistrate as opposed to the facts as set forth in the hearing transcript.

IV. When an applicant for attorney fees is cross-examined during the hearing on these fees, it is error for the court to rule fees were excessive and unnecessary when such fact does not appear in the record.

V.  Whether the probate court can make an unsupportable finding that the guardianship assets cannot justify attorney fees as requested.

VI. Whether the probate court can make a determination that certain legal services were clerical, excessive and unnecessary and not justified when the court is unable to identify those services which were clerical, excessive and unnecessary and not justified.

VII. Whether the probate court can completely deny specific legal services rendered as being clerical in nature and hold that these services had no value.

VIII. Whether the probate court can ignore objections to the magistrate's findings and not address the issues raised.

IX. Whether the probate court was in error in not awarding applicant his costs when objecting to the magistrate's report.